Our final case of the day is People v. Troy Humphrey and for the appellate, Mr. Vonneman, for the athlete, Ms. Brooks. May I proceed? Thank you. May I please start, counsel? This case is about a guy who gets convicted of aggravated driving under the influence. He has two hung juries, third jury gets convicted. My first issue deals with the first trial. My objection, or our objection, is on the mistrial. What happened in the first trial, the jury sent a note after they'd been deliberating and said they were deadlocked six to six. The defendant's attorney said she wanted the prayer instruction. The court said no. The court said, I'm going to do this.  If the jury is truly deadlocked and it is considered position of the jury that further deliberation is not reasonably likely to lead to a verdict, the usual course is for the court to declare a mistrial. The court also said the court has the option of recessing deliberations of the jury for the evening and directing the jury to return for further deliberations. Whether that course would be productive is for the jury to decide. And he said, the case is now in the hands of the jury, and the court will defer to the collective judgment of the jury. Now, as I understand the law, it's up to the trial court to decide whether a mistrial should be declared. It should be whether the manifest necessity of the ends of public justice will be defeated at this time. Well, Mr. Bonham, and I agree with you, the trial court's call as to whether or not to hang the jury. But I think the issue is whether, you know, given the split was six to six, okay? I only have five on each hand. I got it. But given that the split was even like that, is it your argument that you're required to give a prim? No, I've never argued that. I'm thinking back to when I was a trial judge. You know, if I've got a holdout, fine. Two holdouts, fine. I'll give a prim, you know, try to force a verdict. But if it's six to six? Well, the problem I have, Judge, and I understand what you're saying, though, the problem is this judge says, you decide. I mean, they don't say, I don't object in a trial, and then the judge turns to the jury and says, okay, you guys can take this one. Should you overrule it? Should I grant it? Should the jury decide whether evidence comes in? I don't think that's exactly the question he was asking them. Wasn't he asking the jury to tell him whether they thought they could get a verdict or not if they returned to deliberate? That's the way I took it. The case is now in the hands of the jury, and the court will defer to the collective judgment of the jury. About whether or not they could return a verdict. Well, I think it's whether they give them two choices. They can say, okay, you can go home, and we'll call it a mistrial, or we'll have a, you know, or you can keep deliberating. Who's not going to vote for home? Yeah, and it's like 5 p.m., 5.15, and in fact, they come back in 11 minutes and say, well, how much more, you know, I think the idea of a prim instruction. But when they came back, didn't they say, we just don't think we'll ever reach a unanimous verdict? That's all they're telling him, and then he declares the mistrial. Well, I think, then why did he say, I'm going to defer to your judgment? You get two choices. Okay, we're picking choice two, then okay, a mistrial. Well, it's like I said, I don't think he's saying, I'm going to defer to your judgment about whether I should call a mistrial or not. I'm deferring to your judgment about whether you think you can make progress in reaching a unanimous verdict. Well, then why did he give them two choices? Why did he say, the other option is that we will go back and deliberate, or we won't have to deliberate anymore, and we'll have a mistrial? That's his job. The jury's job is to say whether you can come to a unanimous verdict or not, not all this other stuff. Besides, I think the purpose of the prim, and I'm not saying you have to give it, but the purpose of it is to give the jury one more chance, one more chance to decide. You know, it doesn't say that, you know, the exact language here I've got, you must impartially consider the evidence, they should not hesitate to re-examine their views. Well, let's do that. I would think, I know both you and Justice Appleton, I'm a peer department jury trial, and I would think if I'd asked for a prim instruction, both of you would have given it to me in a trial. I mean, what's the harm? In fact, the second trial, the second procedure, that's what happened. At least on my part, I would agree with you. The question here, though, is whether or not it's here or not. Well, I think, you know, the prosecutors are always talking about sending a message. Well, why don't we send a message and say, follow what you're supposed to follow, don't make up your own stuff. You know, a prim instruction is pretty clear, and it's pretty clear that the judge is supposed to make the decision. I understand what the judges are saying here, but I think he said, that's not my decision, it's your decision, you guys decide. Well, we're both going to go home. Okay, let's go home. Especially when a defendant objects, I mean, that's the key too. If the defendant didn't say sure, that's fine. I said, no, that's a prim instruction. Your opponent referred to Wolf. Are you saying that in your reply brief? I'm sorry, Judge? Your opponent referred to a case by the name of Wolf. I just was looking through your brief to see if you responded to it, where he says in his brief, there was no error where the trial court declared a misdial without giving the prim instruction after just two hours of delivery. Well, the second part of my argument is that it was an abuse of discretion for him to do that. I'm not saying there's a hard and fast rule there. I'm saying the first part of my objection is the fact that he deferred his decision, or her decision, I don't remember if it was a man or a woman, to the jury. My second thing is that then he abuses discretion by doing that. And I think that case has to deal with abuse of discretion. What I'm arguing in the second point, if you're not buying that point, was that he abuses discretion at that time. I mean, yeah, they were out five hours, but I would argue a DUI is a complex case. I mean, again, in most criminal cases, the guy did it or he didn't do it. There's a defense or there isn't a defense. But in a DUI, you're trying to decide whether an individual that you've never met is impaired enough that he should be convicted of DUI while driving a vehicle. And how do you do that? Well, you do it on basis, especially without a breath test, which we don't have here, his or her actions. You know, did he drive and avoid potholes? Did he drive over the center line because he was drunk? Did he do other things? It's very complicated. Was his argumentative attitude because he was drunk or because he was mad he got arrested for DUI? You know, there's a video. There was a video of his driving, and I watched the video. I'm not sure I saw any potholes. Well, there was some – looks like, to me anyway, there's some kind of obstruction stuff. I didn't see potholes either, to be honest with you. But I did see some obstruction. It wasn't the best video. I didn't see him making an abrupt stop. The cop said he did that, and I didn't see that. And the state did argue that, for what it's worth, that the defendant was collaterally stopped from making this argument. And I just wanted to point out that although the way it worked was the judge says – told her what he was going to do for the jury instruction. She says, I certainly would object to a hung jury on behalf of Mr. Humphrey. Again, a prim instruction would take care of my objection. The court says she's not given the prim instruction, and she says, I understand that. And then she says, well, if prim is denied, then I'm fine with this going to the jury. I'm saying that she should not be collaterally stopped from that because she's not arguing like they do in the state's case. Well, that's okay, and I'll get up on the field and say, it's not okay. That's invited error. We don't have invited error. I just wanted to deal with that issue. Are there any more questions on number one? Okay. Issue number two deals with misstatements of evidence by the prosecutor in closing argument. Is it misstatement or incomplete statement? Well, I'd say misstatements, Your Honor. The first one, he says, Mr. Pettit, a defense attorney, had no idea where the defendant was prior to 10 a.m. Objection. Overruled. Doesn't know if the defendant had been drinking, doesn't know what the defendant had been up to. But Mr. Pettit actually said, the prosecutor, when he asked him, so where does that put you at, guys? Where does that put you at, you guys? He said he met around 9, 30, 10 that night, so the prosecutor is trying to get him to say 9, 30, 10. He says, trying to be nice, probably right around there, 8, 30 to 9. Now, I added italics, but it was 8, 30 to 9. So when you say he met at 10 and you don't know what he was doing ahead of time, when the evidence was 8, 30 or 9 to 10, they weren't drinking anything at all, and the whole issue is how much this guy had to drink, whether he was impaired or not. That's pretty important. And it's not true. He or she also said, weigh that when you weigh the defendant's side of the story, because he's the only one telling you he had two beers. Well, he did say he had two beers, but so did Asa Pettit, who was a defense witness, who was with him before and at the bar. In fact, was even following his car when he got arrested, or was in front of the car. But the jury heard Pettit say that. True. But the prosecutor doesn't get to misstate the evidence, especially when it's objected to. I'm not sure, but the state also argued, I think, that two ice houses and two beers, and an ice house is a beer. So that is consistent. And the third objection is not in the statement of evidence, but the prosecutor said, why isn't he taking the breath test? It's nothing to do with he wanted to tell his side of the story. It has everything to do with what he knows the results will be. He knows he's over the limit. State and defendant objections overruled. It goes on to say he knows he's guilty. Now, you can admit it for consciousness of guilt. I understand that. But by saying he knows he's guilty, he's telling the defendant he has to put on evidence to rebut that he's guilty. In other words, he's shifted the burden, which we all know he can't do that. I guess I'm not following you, Mr. Bannerman. How is that different? If you can argue consciousness of guilt, and the prosecutor says he didn't blow because he knows he's guilty, how is that different from our consciousness of guilt? It's close. I'm not sure I understand it totally. But there is a case that says that, that you can't shift the burden. If you say that he knows he's guilty, how do you refute that? I think those cases that say that are the ones where the prosecutor gets up there and he or she argues, the defendant could have taken a breath test and given you the evidence that you need to acquit him, but he chose not to do that. That's a little different. I would agree that those cases shift the burden. I think it's closer to the court, but I understand what you're saying. But my argument then is you take all these comments together, which I think you're allowed to do, whether they endanger substantial prejudice against the defendant, such that it is possible to say whether or not a verdict of guilt was resulted from them. I think when you put them all together, which the Supreme Court says you're supposed to do, it is important. You've got a prosecutor saying only one guy said he had two peers, that's the defendant. It's not true. You've got a prosecutor saying that the guy said he wasn't with him before 10 o'clock, and he said he was with him. That's not true. The third one is what I was saying about whether or not he's shifting the burden or not. So were these comments, the material facts in his conviction, objected to comments? I think they were. Again, the whole issue is whether he's drunk or not. Again, Justice Altshuler and Justice McCullough, both of you tried DUI cases. I don't know about Justice McCullough, but I know both of you guys did. And if you were convinced that somebody had two beers in a bench trial, I think you'd find them not guilty. I mean, you'd have to be convinced, I understand, but two beers is only two beers, especially over four hours. So that's pretty important. And my last argument has to do with reasonable doubt. I suggest you both notice there was a video. I'm sure everybody looked at the video. I don't think that evidence was enough. Besides the pothole thing and whether he came to a rough stop or not, Officer Miklick says that the eyes were bloodshot. And the video shows and the pictures of his booking shows that they weren't. The booking photo, actually, his eyes do look a little bloodshot in the booking photo, but in the video, I agree with you, it's hard to tell. To me, they didn't look very bloodshot in the video. They did look bloodshot to me, but I understand what you're saying. But the booking photo is a different matter. I think in the booking photo, if you looked at it, they do look a little bloodshot to me. Well, he could have been tired. True, it's two in the morning. That's when he gets stumped. But he got the alphabet right, A to G. He did the numbers backwards right. The one-legged stand, he did raise his arms for balance, but he wasn't told he couldn't. And he also kept his legs six inches above the ground for 36 inches, which is pretty hard to do. I mean, I can't do it standing here. I can guarantee you that. The demonstration by Mr. Munkum, Officer Minkum, was not on video, so I don't know whether he followed the demonstration or not, because it wasn't on the video. Again, he said he got a blidger and upset. That could mean he was under the influence. I would argue that means that he was upset because he got rushed for DUI. So that's all the comments I have, unless the court has any. I don't see any. Thank you. You'll have additional time in rebuttal. You may proceed. May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. The state did cite the Wolf case, which was less time deliberating and no prim, and that was okay in that case. This case does not involve complex facts. It had really only one contested issue, which was whether the defendant was under the influence. And there were two witnesses on each side, and the testimony was not lengthy. So relatively speaking, the length of the witnesses, the simplicity of the issues versus the length of the deliberations, plus what is not usually present is the jury volunteering the split, which is something the judge is not allowed to ask for, I think. But when the jury says that, it's a 6-6, and they don't see any prospect for unanimous verdict, then at that point, the judge could have simply, well, the judge could have declared the mistrial at that point, but of course, maybe not taking the word of the foreman or foreperson of the jury, but bringing the jury in and making sure that the jury was in agreement with this note. That, of course, could have been sufficient to not violate the Double Jeopardy Clause upon retrial. But what the judge did here was actually go further. The inquiry of whether they thought further deliberations would be productive or whether they believed they were actually truly deadlocked, and then bringing the jury in and questioning the foreperson in front of the entire jury and getting that confirmation before making the ultimate decision. Now, the defendant's argument is, well, the trial court abdicated this decision-making role, and there's a reference in the note to the jury deciding, but really, the trial court did make that ultimate decision, despite giving deference to the jury's reply. Essentially, the defendant claims here that he did object to the hung jury, which is correct. He did request prim, which is also true. But the important part is his main complaint here is the fact that the jury is getting to decide, and that is based on what note that the trial court sent to the jury about that request. And with respect to that note, the defense counsel said that the defense counsel was, quote, fine with this going to the jury. So it's not a situation where the defendant objected to this particular issue, whether the trial court abdicated its decision-making role to the jury. It's actually even more than just mere forfeiture of that by failing to object. It's a case in which the defense counsel actually agreed with this particular communication, that now the defendant on appeal claims was error. So it is more a situation of invited error than simple forfeiture. And the fact that the defendant did object to a hung jury and requested prim, and only agreed with this communication given that the request for prim was denied, because the denial of prim was not an abuse of discretion, essentially it is much closer to invited error than simple forfeiture. But even if the invited error rule were not applied here, the defendant did forfeit this by not objecting on this particular ground in the trial court and allowing this to go to the jury without objection. So for both of those reasons, the defendant would not be entitled to any relief on appeal. By raising this new theory on appeal for the first time, in effect one that's actually different from the position taken below. So for those reasons, there's no double jeopardy violation. And with respect to the strength of the evidence, there was in fact testimony from the defendant and a witness about two beers. And the defendant then believes that two beers would not be sufficient to make somebody impaired. However, there's no level of alcohol that's necessary that could create the legal impairment. So for that respect, even if that testimony were believed, it would not necessarily entitle the defendant to acquittal. But of course, the jury doesn't have to believe defense testimony. And also, this court is bound by the rules of appellate review and to take all reasonable inferences from the record in favor of the prosecution and view the case in the light best favorable to the prosecution. So when the defendant says alternative explanations for the various incriminating facts in the record and circumstantial evidence of his impairment, those may not be accepted unless they are the only reasonable inferences from the record. So when he claims anger, for example, when he was on the floor pleading with the officers not to tase him, when the officers claimed there was in fact no taser produced and no threat to tase him, it seems like a very unusual behavior that perhaps a reasonable inference then would be that he was influenced by the alcohol is the reason why he was acting in such an unusual manner. So that goes along with the belligerence and mood swings. Well, he's also very polite and cooperative on the tape, deferential to the police officers, does everything they ask him, and he gets arrested anyway. So I mean, I think you could argue that that would be a reason he might behave the way he did once he's at the jail. Well, that's the idea, is that if it is a reasonable inference that he was angered at being arrested, that would be a reasonable inference. But if that's not the only reasonable inference, then essentially it's up to the jury. It could also be that the word on the street is, if you get arrested in Champaign-Urbana, things happen to you once you're taken in. Not that that's true. Not necessarily, but at least from the defendant's own perspective, if that were the case, he should have testified to that effect, but we don't have that in the record, so that's not really a fact that could be considered. So the defendant's own viewpoints about treatment by police, his own personal treatment by police, whether he's witnessed people being tased or not, that sort of thing is not in the record from his own, and he could have testified if that were in fact the case. But also the video did show the swerving and drifting and no obvious hazards. There might have been reference to some sort of car spots or something that were on the road, but certainly not anything that required him to depart from his lane of traffic, especially in such dramatic... Would it be that they looked to him like potholes because they were like oil stains or something? If they were in fact oil or tar stains, those would have been more or less filled potholes, but not anything that he would have... That late at night, you're tired, could look like a pothole? If you were drunk, that would certainly be a lot better... Exactly, but the point is that they would look more like potholes if you were in fact drunk. But the fact that he claimed that he was swerving from potholes certainly brings the credibility of his other claims, particularly that he only had two beers into question, because Missouri could see for itself that there were no potholes on the video and therefore doubt the credibility of his other claims, particularly the extent of his alcohol consumption. The pre-exit tests, even if you pass those, there's still major indicators of impairment on the field sobriety tests, after you exit the vehicle, hopping about, raising arms to shoulder level, failing to touch heel to toe on multiple steps. So there are major indicators of impairment there. In addition, an important piece of circumstantial evidence is refusal of breath testing. So that's not to be discounted as well. It's a very strong evidence at trial, and it's sort of surprising that it did result in a hung jury on the first trial, but that's based on that jury. But at least the objective view of the evidence that this court would have to go through, on the record from this particular trial in which he was convicted, the evidence was in fact very strongly weighted. And that also applies to the closing argument issues, because he cannot show that any of these errors were substantially prejudicial, particularly because of the weight of the evidence against him. The claims he does make are not misstatements of evidence, because Asa Pettit, the defense witness, actually contradicts himself, and it's not a situation where there is no evidence in the record that they met together at 10, because Asa Pettit, working back from a 2 a.m. traffic stop, talks about two hours and two hours, and adding those together would arrive at 10 a.m. or 10 p.m. And so it's not a situation where, although he wants to then also say, well, it was 8.30 or maybe 9, it's actually self-contradictory, and the prosecutors are entitled to adopt a view of the evidence that is supported by the testimony and the evidence in the record, and the fact that there's conflicting evidence was, I think that was part of the trial court's ruling, it's up for the jury to resolve the conflict in the evidence. So that was not an error. And the fact that the reference to two beers, the prosecutor mentioned the fact that there was only one witness, a defendant, who was talking about only two beers. And of course the emphasis is on only, because I didn't see it in Pettit's testimony  and also Pettit also referred to a couple, and I cited the definition that couple could mean more than two. So it's not a situation where there was in fact an absence of evidence, but a different version set forth by the one defense witness which the prosecutors were entitled to adopt. With respect to shifting the burden, there was nothing like the statements in the Johnson case where the closing argument referred to the defendant's opportunity to prove his own innocence. Well, that is what causes burden shifting. When the prosecutor injects, and this is not our case, but in a different case, Johnson case, that when the prosecutor objects that there is an opportunity to prove innocence, then it sort of implies to the jury that the defendant might have to prove his innocence, which is not the law. So therefore that's a burden shifting argument that is impermissible. But there was nothing in this case, and I think the defendant admits there was nothing direct in the argument in this case. The defendant's argument is, well, the prosecutor was implying that the defendant had an opportunity to prove his innocence, but certainly there was nothing that the prosecutor actually said that told the jury that the defendant was required to prove the innocence. Certainly nothing hinted at from the remarks, which was simply a straight consciousness of guilt claim. So for those reasons, there is no basis for granting a new trial or reversing on sufficiency of the evidence grounds or on discharging the defendant on double jeopardy grounds. So for those reasons, the State requests this Court to affirm, and I will entertain any further questions. I don't see any. Thank you. Mr. Bollinger? Thank you. If I may, just a few points. The State's now arguing forfeited instead of collateral estoppel, but my same argument applies to that also. She didn't agree, and she wanted the print instruction. I'd also like to point out that double jeopardy can be raised for the first time on appeal, even if it's not even put in a post-trial motion, and that's what we're talking about is double jeopardy. She says there is strong evidence. Well, if there's such strong evidence, it's the same evidence that came up in two other jury trials. I mean, the very first one, they're hopelessly deadlocked 6 to 6. I mean, that's not strong evidence. And the first two trials are part of the record. There certainly isn't strong evidence there. We don't have to backpedal as far as getting the time. Mr. A. Zepedic said it was 8.30 or 9. And as far as whether a couple means two or not, all my life a couple has meant two. I don't see a couple of justices in front of me. I see three, and when I go to a wedding, I don't see three people up there. I see a couple. So a couple means two. It may not matter anything, but a couple means two. Thank you. Thank you. We'll take this case under advisement, stand in recess until the next call.